**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE**

| | |
|---|---|
| **U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF J.P. MORGAN CHASE COMMERCIAL MORTGAGE SECURITIES TRUST 2007-LDP10 COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-LDP10,** | CASE NO. 3:17-cv-00023 |
| **Plaintiff,** | |
| **v.** | |
| **WESTMARKET ASSOCIATES 2006 LLC, LITTLE RIVER ASSOCIATES 2006 LLC, CLINTON ASSOCIATES 2006 LLC, NEWMARKET ASSOCIATES 2006 LLC, APOPKA ASSOCIATES 2006 LLC, AND WESTGATE ASSOCIATES 2006 LLC,** | |
| **Defendants.** | |

---

**VERIFIED COMPLAINT AND APPLICATION FOR APPOINTMENT OF RECEIVER
AND INJUNCTIVE RELIEF**

---

COMES NOW, U.S. Bank National Association, as Trustee, successor to Wells Fargo Bank, N.A., as Trustee for the registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Trust 2007-LDP10 Commercial Mortgage Pass-Through Certificates, Series 2007-LDP10 (the "Noteholder"), and for its complaint against Westmarket Associates 2006 LLC, a Delaware limited liability company ("Westmarket"), Little River Associates 2006 LLC, a Delaware limited liability company ("Little River"), Clinton Associates 2006 LLC, a Delaware

1

limited liability company ("Clinton"), Newmarket Associates 2006 LLC, a Delaware limited liability company ("Newmarket"), Apopka Associates 2006 LLC, a Delaware limited liability company ("Apopka"), and Westgate Associates 2006 LLC, a Delaware limited liability company ("Westgate," and together with Westmarket, Little River, Clinton, Newmarket, and Apopka, collectively, "Borrowers"), states the following:

## Introduction

Pursuant to Rules 65 and 66 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 754 and 1367(a), Noteholder seeks enforcement of the terms and conditions of certain Loan Documents (defined below). This action is related to a commercial loan to Borrowers in the original principal amount of $49,600,000.00 (the "Loan") held by Noteholder which is secured by, among other things, security instruments and assignments of leases and rents encumbering income-producing commercial retail properties located in Tennessee, North Carolina, and Florida. The Loan is in default due to Borrowers' failure to comply with their obligations under the Loan Documents, including paying the Loan in full upon maturity. As a result, Noteholder seeks the following relief: (1) appointment of a receiver for assets comprising the Collateral (defined below), and (2) injunctive relief to effectuate the receivership estate. In support hereof, Noteholder relies upon the Verification of Christopher Peters incorporated herein, and the Motion for Entry of Agreed Order Appointing Receiver and Granting Injunctive Relief and brief in support thereof filed contemporaneously herewith.

## Parties

1.     U.S. Bank National Association is a national banking association with its main office in Minneapolis, Minnesota.

2

2.     U.S. Bank National Association is duly appointed and presently serving as trustee holding certain assets in trust including the Loan to Borrowers.

3.     Defendant Clinton is a Delaware limited liability company that maintains its principal place of business at 1840 Main Street, Suite 204, c/o Coastal Equities, Weston, Florida 33326-3685.  Upon information and belief, neither the members of Clinton nor the entities or individuals that are partners or members of the corporate parents of Clinton are citizens of Minnesota.  Clinton owns certain real property and improvements located at 5010 Clinton Highway, Knoxville, Knox County, Tennessee (the "Clinton Property").  Clinton has authorized National Registered Agents, Inc., 800 South Gay Street, Suite 2021, Knoxville, Tennessee 37929-9710 as its registered agent to accept service of process.

4.     Defendant Westmarket, is a Delaware limited liability company that maintains its principal place of business at 1840 Main Street, Suite 204, Weston, Florida 33326-3685.  Upon information and belief, neither the members of Westmarket nor the entities or individuals that are partners or members of the corporate parents of Westmarket are citizens of Minnesota.  Westmarket owns certain real property and improvements located at 4653 West Market Street, Greensboro, Guilford County, North Carolina (the "Westmarket Property").  Westmarket has authorized National Registered Agents, Inc., 160 Mine Lake Ct., Suite 200, Raleigh, North Carolina 27615-6417 as its registered agent to accept service of process.

5.     Defendant Little River is a Delaware limited liability company that maintains its principal place of business at 1840 Main Street, Suite 204, Weston, Florida 33326-3685.  Upon information and belief, neither the members of Little River nor the entities or individuals that are partners or members of the corporate parents of Little River are citizens of Minnesota.  Little River owns certain real property and improvements located at 1312 West Grantham Street,

3

Goldsboro, Wayne County, North Carolina (the "Little River Property"). Little River has authorized National Registered Agents, Inc., 160 Mine Lake Ct., Suite 200, Raleigh, North Carolina 27615-6417 as its registered agent to accept service of process.

6.     Defendant Newmarket is a Delaware limited liability company that maintains its principal place of business located at 1840 Main Street, Suite 204, Weston, Florida 33326-3685. Upon information and belief, neither the members of Newmarket nor the entities or individuals that are partners or members of the corporate parents of Newmarket are citizens of Minnesota. Newmarket owns certain real property and improvements located at 1339 US Highway 13, Ahoskie, Hertford County, North Carolina (the "Newmarket Property"). Newmarket has authorized National Registered Agents, Inc., 160 Mine Lake Ct., Suite 200, Raleigh, North Carolina 27615-6417 as its registered agent to accept service of process.

7.     Defendant Apopka is a Delaware limited liability company that maintains its principal place of business located at 1840 Main Street, Suite 204, Weston, Florida 33326-3685. Upon information and belief, neither the members of Apopka nor the entities or individuals that are partners or members of the corporate parents of Apopka are citizens of Minnesota. Apopka owns certain real property and improvements located at 737 S. Orange Blossom Trail, Apopka, Orange County, Florida (the "Apopka Property"). Apopka has authorized NRAI Services, Inc., 1200 South Pine Island Road, Plantation, Florida 33324 as its registered agent to accept service of process.

8.     Defendant Westgate is a Delaware limited liability company that maintains its principal place of business located at 1840 Main Street, Suite 204, Weston, Florida 33326-3685. Upon information and belief, neither the members of Westgate nor the entities or individuals that are partners or members of the corporate parents of Westgate are citizens of Minnesota.

4

Westgate owns certain real property and improvements located at 2625 Hiawassee Road, Orlando, Orange County, Florida (the "Westgate Property," together with the Westmarket Property, Little River Property, Clinton Property, Newmarket Property, and Apopka Property, collectively, the "Properties"). Westgate has authorized NRAI Services, Inc., 1200 South Pine Island Road, Plantation, Florida 33324 as its registered agent to accept service of process.

## Jurisdiction and Venue

9. This dispute arises between citizens of different states, and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs. Therefore, this Court has diversity-of-citizenship jurisdiction over the subject matter of this dispute pursuant to 28 U.S.C. § 1332.

10. Borrowers are all obligated for payment of the Loan, and all obligations under the Loan are secured by the Clinton Property located in the State of Tennessee.

11. Borrowers are subject to personal jurisdiction in the State of Tennessee, and venue of this action is proper in this District, because a substantial part of the property at issue is situated in this District. Tenn. Code Ann. §§ 20-2-214 and/or 20-2-223; 28 U.S.C. § 1391(b)(2).

## Factual Allegations

**A.** **The Loan**

    **(i)** **The Loan Agreement and Note**

12. On or about December 21, 2006, Borrowers obtained the Loan from AIG Mortgage Capital, LLC (the "Original Lender") in the original stated principal amount of $49,600,000.00.

13. The Loan is evidenced by that certain Amended, Restated and Consolidated Promissory Note dated December 21, 2006, made by Borrowers in favor of Original Lender, in

5

the original stated principal amount of $49,600,000.00 (as assumed, amended, and assigned from time to time, the "Note"). A true and correct copy of the Note is attached hereto as **Exhibit A**.

14. The Note calls for payment in accordance with the terms set forth in that certain Loan Agreement dated December 21, 2006, executed by and between Borrowers and Original Lender (as assumed, amended, and assigned from time to time, the "Loan Agreement"). A true and correct copy of the Loan Agreement is attached hereto as **Exhibit B**.

**(ii)**     **The Security Instruments.**

15. To secure Borrowers' obligations to Original Lender under the Note, Borrowers granted to Original Lender a first priority security interest in the land and improvements associated with the Properties (collectively, the "Real Property Collateral") pursuant to the following security instruments (collectively, the "Security Instruments"):

    a) that certain Deed of Trust and Security Agreement dated December 21, 2006, executed by Clinton for the benefit of Original Lender, and recorded with the Register of Deeds for Knox County, Tennessee on December 27, 2006, as Instrument Number 200612270052635;

    b) that certain Deed of Trust and Security Agreement dated December 21, 2006, executed by Westmarket, Little River, and Newmarket for the benefit of Original Lender, and recorded among (i) the official records for Guilford County, North Carolina on December 29, 2006, as Instrument No. 2006121416 in Book R 6654, Page 3005, (ii) the official records for Wayne County, North Carolina on December 29, 2006 as Doc ID 009586170037 in Book 2488, Page 371, and (iii) the official records for Hertford County, North Carolina on December 29, 2006, in Book 677, Page 735; and

6

c) that certain Amended and Restated Mortgage and Security Agreement and Notice of Future Advance dated December 21, 2006, executed by Apopka and Westgate for the benefit of Original Lender, and recorded among the official records for Orange County, Florida on December 28, 2006, as Instrument 20060836882 in Book 09035, Page 4220.

True and correct copies of the Security Instruments are attached hereto as **Exhibits C-1 through C-5**.

**(iii)**     **The Assignment of Leases and Rents**

16.     As further security for Borrowers' obligations to Original Lender, Borrowers granted to Original Lender an assignment of all rents, rent equivalents, income, receivables, revenues, receipts, or other proceeds of any kind whatsoever, derived, generated, or related to or from the Properties (collectively the "Rents") generated in connection with the Properties pursuant to the following assignments (collectively, the "Assignments of Rents"):

a) that certain Assignment of Leases and Rents dated December 21, 2006, executed by Clinton in favor of Original Lender, and recorded with the Register of Deeds for Knox County, Tennessee on December 27, 2006, as Instrument Number 200612270052636;

b) that certain Assignment of Leases and Rents dated December 21, 2006, executed by Westmarket, Little River, and Newmarket in favor of Original Lender, and recorded among (i) the official records for Guilford County, North Carolina on December 29, 2006, as Instrument No. 2006121417 in Book R 6654, Page 3042, (ii) the official records for Wayne County, North Carolina on December 29, 2006, as Doc ID 009586190018 in Book 2488, Page 408, and (iii) the official records

7

for Hertford County, North Carolina on December 29, 2006, in Book 677, Page 772; and

  c) that certain Assignment of Leases and Rents dated December 21, 2006, executed by Apopka and Westgate in favor of Original Lender, and recorded among the official records for Orange County, Florida on December 28, 2006, as Instrument 20060836883 in Book 09035, Page 4253.

True and correct copies of the Assignments of Rents are attached hereto as **Exhibits D-1 through D-5**.

  **(iv)** **The Financing Statements**

  17. Pursuant to the Security Instruments, Borrowers' obligations were further secured by certain personal property of Borrowers, including without limitation, Borrowers' fixtures, equipment, leases, proceeds, accounts and other assets (collectively, the "Personal Property Collateral," and together with the Real Property Collateral and the Rents, collectively, the "Collateral"). The Collateral encompasses all real and personal property related to the Properties.

  18. Original Lender's security interest in the Personal Property Collateral was perfected through the filing of the following UCC-1 Financing Statements (as amended, and continued from time to time, the "Financing Statements"):

  a) with respect to Clinton, (i) that certain UCC-1 Financing Statement recorded with the Register of Deeds for Knox County, Tennessee on December 27, 2006, as Instrument Number 200612270052637, that certain assignment amendment filed on June 1, 2007, as Instrument Number 200706010098589, that certain assignment amendment filed on July 24, 2007, as Instrument Number

8

200707240007519, that certain assignment amendment filed on August 6, 2007, as Instrument Number 20070806011846, that certain assignment amendment filed on April 10, 2008, as Instrument Number 200804100076046, that certain assignment amendment filed on April 27, 2010, as Instrument Number 201004270067353, that certain continuation amendment filed on July 11, 2011, as Instrument Number 201107110001748, that certain continuation amendment filed on July 15, 2016, as Instrument Number 201607150003335; and (ii) that certain UCC-1 Financing Statement recorded with the Delaware Department of State on January 11, 2017, as Filing Number 2017 0243185;

b) with respect to Westmarket, (i) that certain UCC-1 Financing Statement recorded among the official records for Guilford County, North Carolina on December 29, 2006, as Instrument No. 2006121418 in Book R 6654, Page 3060, that certain assignment amendment filed on February 13, 2007, as Instrument No. 2007011984 in Book R 6675, Page 2401, that certain assignment amendment filed on July 25, 2007, as Instrument No. 2007061780 in Book R 6762, Page 900, that certain assignment amendment filed on August 15, 2007, as Instrument No. 2007068040, in Book R 6772, Page 3091, that certain assignment amendment filed on April 10, 2008, as Instrument No. 2008026211, in Book R 6875, Page 941, that certain assignment amendment filed on March 22, 2010, as Instrument No. 2010013297, in Book R 7108, Page 2758, that certain continuation amendment filed on July 18, 2011, as Instrument No. 2011036344, in Book R 7256, Page 410, that certain continuation amendment filed on July 11, 2016, as Instrument No. 2016036719, in Book R 7832, Page 2088; and (ii) that certain

9

UCC-1 Financing Statement recorded with the Delaware Department of State on January 11, 2017, as Filing Number 2017 0242955;

c) with respect to Little River, (i) that certain UCC-1 Financing Statement recorded among the official records for Wayne County, North Carolina on December 29, 2006, as Doc ID 009586200008 in Book 2488, Page 426, that certain assignment amendment filed on January 29, 2007, as Doc ID 009625720001 in Book 2495, Page 535, that certain assignment amendment filed on July 26, 2007, as Doc ID 009765990001 in Book 2547, Page 600, that certain assignment amendment filed on August 10, 2007, as Doc ID 009776890001, in Book 2553, Page 168, that certain assignment amendment filed on April 25, 2008, as Doc ID 009943410001, in Book 2618, Page 686, that certain assignment amendment filed on April 30, 2010, as Doc ID 010332610005, in Book 2776, Page 551, that certain continuation amendment filed on July 19, 2011, as Doc ID 010545940004, in Book 2866, Page 163, that certain continuation amendment filed on July 18, 2016, as Doc ID 011469300004, in Book 3238, Page 407; and (ii) that certain UCC-1 Financing Statement recorded with the Delaware Department of State on January 11, 2017, as Filing Number 2017 0242641;

d) with respect to Newmarket, (i) that certain UCC- Financing Statement recorded among the official records for Hertford County, North Carolina on January 12, 2017, in Book 788, Page 356; and (ii) that certain UCC-1 Financing Statement recorded with the Delaware Department of State on January 11, 2017, as Filing Number 2017 0243532;

10

e)  with respect to Apopka, (i) that certain UCC-1 Financing Statement recorded among official records for Orange County, Florida on December 28, 2006, as Instrument No. 20060836884 in Book 09035, Page 4268, that certain assignment amendment filed on March 29, 2007, as Instrument No. 20070206636 in Book 09185, Page 4344, that certain assignment amendment filed on March 29, 2007, as Instrument No. 20070206637 in Book 09185, Page 4345, that certain assignment amendment filed on October 5, 2007, as Instrument No. 20070659809, in Book 09459, Page 0402, that certain assignment amendment filed on April 15, 2008, as Instrument No. 20080218908, in Book 09658, Page 4179, that certain assignment amendment filed on December 9, 2009, as Instrument No. 20090714356, in Book 9973, Page 0088, that certain continuation amendment filed on August 8, 2011, as Instrument No. 20110413957, in Book 10250, Page 7612, that certain continuation amendment filed on July 12, 2016, as Instrument No. 20160354496; and (ii) that certain UCC-1 Financing Statement recorded with the Delaware Department of State on January 11, 2017, as Filing Number 2017 0243417; and

f)  with respect to Westgate, (i) that certain UCC-1 Financing Statement recorded among official records for Orange County, Florida on January 13, 2007, Instrument No. 20170027437; and (ii) that certain UCC-1 Financing Statement recorded with the Delaware Department of State on January 11, 2007, as Filing Number 2017 0243326.

True and correct copies of the Financing Statements are attached hereto as **Exhibits E-1 through E-6**.

11

**B.** __Assignment to Noteholder__

19.     For purposes of this Complaint, the Loan Agreement, Note, Security Instruments, Assignments of Rents, Financing Statements, and all other documents evidencing or relating to the Loan are referred to herein as the "Loan Documents."

20.     Original Lender sold, transferred, assigned, and conveyed all of its interest in the Loan Documents to Some II, LLC, a Delaware limited liability company ("Some II") by executing certain agreements and instruments including without limitation:

   a)   Allonge to Promissory Note;

   b)   Assignment of Deed of Trust and Security Agreement recorded with the Register of Deeds for Knox County, Tennessee on January 9, 2007, as Instrument Number 200701090056236;

   c)   Assignment of Assignment of Leases and Rents recorded with the Register of Deeds for Knox County, Tennessee on January 9, 2007, as Instrument Number 200701090056237;

   d)   Assignment of Deed of Trust and Security Agreement recorded among the official records of Guilford County, North Carolina on February 13, 2007, as Instrument No. 2007011980 in Book R 6675, Page 2368;

   e)   Assignment of Assignment of Leases and Rents recorded among the official records of Guilford County, North Carolina on February 13, 2007, as Instrument No. 2007011983 in Book R 6675, Page 2393;

   f)   Assignment of Deed of Trust and Security Agreement recorded among the official records of Wayne County, North Carolina on January 29, 2007, as Doc ID 009625680008 in Book 2495, Page 502;

12

g) Assignment of Assignment of Leases and Rents recorded among the official records of Wayne County, North Carolina on January 29, 2007, as Doc ID 009625690008 in Book 2495, Page 510;

h) Assignment of Deed of Trust and Security Agreement recorded among the official records of Hertford County, North Carolina on February 23, 2007, in Book 680, Page 211;

i) Assignment of Assignment of Leases and Rents recorded among the official records of Hertford County, North Carolina on February 23, 2007, in Book 680, Page 219;

j) Assignment of Amended and Restated Mortgage and Security Agreement with Notice of Future Advance recorded among the official records for Orange County, Florida on March 29, 2007, as Instrument 20070206632, in Book 09185, Page 4313; and

k) Assignment of Assignment of Leases and Rents recorded among the official records for Orange County, Florida on March 29, 2007, as Instrument 20070206633, in Book 09185, Page 4320.

The foregoing are collectively the "First Assignment". A true and correct copy of the First Assignment is attached hereto as collective **Exhibit F**.

21. Some II sold, transferred, assigned, and conveyed all of its interest in the Loan Documents to JPMorgan Chase Bank, N.A. ("JPMorgan") by executing certain agreements and instruments including without limitation:

a) Allonge to Promissory Note;

b) Assignment of Deed of Trust and Security Agreement recorded with the Register of Deeds for Knox County, Tennessee on January 9, 2007, as Instrument Number 200701090056238;

c) Assignment of Assignment of Leases and Rents recorded with the Register of Deeds for Knox County, Tennessee on January 9, 2007, as Instrument Number 200701090056239;

d) Assignment of Deed of Trust and Security Agreement recorded among the official records of Guilford County, North Carolina on February 13, 2007, as Instrument No. 2007011982 in Book R 6675, Page 2384;

e) Assignment of Assignment of Leases and Rents recorded among the official records of Guilford County, North Carolina on February 13, 2007, as Instrument No. 2007011981 in Book R 6675, Page 2376;

f) Assignment of Deed of Trust and Security Agreement recorded among the official records of Wayne County, North Carolina on January 29, 2007, as Doc ID 009625700009 in Book 2495, Page 518;

g) Assignment of Assignment of Leases and Rents recorded among the official records of Wayne County, North Carolina on January 29, 2007, as Doc ID 009625710008 in Book 2495, Page 527;

h) Assignment of Deed of Trust and Security Agreement recorded among the official records of Hertford County, North Carolina on February 23, 2007, in Book 680, Page 227;

14

i) Assignment of Assignment of Leases and Rents recorded among the official records of Hertford County, North Carolina on February 23, 2007, in Book 680, Page 236;

j) Assignment of Amended and Restated Mortgage and Security Agreement and Notice of Future Advance recorded among the official records for Orange County, Florida on March 29, 2007, as Instrument 20070206634, in Book 09185, Page 4328; and

k) Assignment of Assignment of Leases and Rents recorded among the official records for Orange County, Florida on March 29, 2007, as Instrument 20070206635, in Book 09185, Page 4336.

The foregoing are collectively the "Second Assignment".  A true and correct copy of the Second Assignment is attached hereto as collective **Exhibit G**.

22.     JPMorgan sold, transferred, assigned, and conveyed all of its interest in the Loan Documents to Some II by executing certain agreements and instruments including without limitation:

a) Allonge to Promissory Note;

b) Assignment of Deed of Trust and Security Agreement recorded with the Register of Deeds for Knox County, Tennessee on August 6, 2007, as Instrument Number 200708060011844;

c) Assignment of Assignment of Leases and Rents recorded with the Register of Deeds for Knox County, Tennessee on August 6, 2007, as Instrument Number 200708060011845;

15

d)  Assignment of Deed of Trust and Security Agreement recorded among the official records of Guilford County, North Carolina on August 15, 2007, as Instrument No. 2007068038 in Book R 6772, Page 3073;

e)  Assignment of Assignment of Leases and Rents recorded among the official records of Guilford County, North Carolina on August 15, 2007, as Instrument No. 2007068039 in Book R 6772, Page 3082;

f)  Assignment of Deed of Trust and Security Agreement recorded among the official records of Wayne County, North Carolina on August 10, 2007, as Doc ID 009776870009 in Book 2553, Page 150;

g)  Assignment of Assignment of Leases and Rents recorded among the official records of Wayne County, North Carolina on August 10, 2007, as Doc ID 009776880009 in Book 2553, Page 159;

h)  Assignment of Deed of Trust and Security Agreement recorded among the official records of Hertford County, North Carolina on August 16, 2007, in Book 687, Page 998;

i)  Assignment of Assignment of Leases and Rents recorded among the official records of Hertford County, North Carolina on August 16, 2007, in Book 687, Page 1007;

j)  Assignment of Amended and Restated Mortgage and Security Agreement and Notice of Future Advance recorded among the official records for Orange County, Florida on October 5, 2007, as Instrument 20070659807, in Book 09459, Page 0389; and

16

k) Assignment of Assignment of Leases and Rents recorded among the official records for Orange County, Florida on October 5, 2007, as Instrument 20070659808, in Book 09459, Page 0398.

The foregoing are collectively the "Third Assignment". A true and correct copy of the Third Assignment is attached hereto as collective **Exhibit H**.

23. Some II sold, transferred, assigned, and conveyed all of its interest in the Loan Documents to Wells Fargo Bank, N.A., as Trustee for the registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Trust 2007-LDP10 Commercial Mortgage Pass-Through Certificates, Series 2007-LDP10 ("Prior Noteholder") by executing certain agreements and instruments including without limitation:

a) Allonge to Promissory Note;

b) Assignment of Deed of Trust and Security Agreement recorded with the Register of Deeds for Knox County, Tennessee on September 3, 2008, as Instrument Number 200809030015845;

c) Assignment of Assignment of Leases and Rents recorded with the Register of Deeds for Knox County, Tennessee on September 3, 2008, as Instrument Number 200809030015846;

d) Assignment of Deed of Trust and Security Agreement recorded among the official records of Guilford County, North Carolina on August 20, 2008, as Instrument No. 2008059962 in Book R 6927, Page 409;

e) Assignment of Assignment of Leases and Rents recorded among the official records of Guilford County, North Carolina on August 20, 2008, as Instrument No. 2008059963 in Book R 6927, Page 414;

17

f) Assignment of Deed of Trust and Security Agreement recorded among the official records of Wayne County, North Carolina on September 12, 2008, as Doc ID 010018730005 in Book 2653, Page 199;

g) Assignment of Assignment of Leases and Rents recorded among the official records of Wayne County, North Carolina on September 12, 2008, as Doc ID 010018740005 in Book 2653, Page 204;

h) Assignment of Deed of Trust and Security Agreement recorded among the official records of Hertford County, North Carolina on October 14, 2008, in Book 705, Page 605;

i) Assignment of Assignment of Leases and Rents recorded among the official records of Hertford County, North Carolina on October 14, 2008, in Book 705, Page 611;

j) Assignment of Amended and Restated Mortgage and Security Agreement with Notice of Future Advance recorded among the official records for Orange County, Florida on September 3, 2008, as Instrument 20080518672, in Book 9751, Page 9088; and

k) Assignment of Assignment of Leases and Rents recorded among the official records for Orange County, Florida on September 3, 2008, as Instrument 20080518673, in Book 9751, Page 9093.

The foregoing are collectively the "Fourth Assignment". A true and correct copy of the Fourth Assignment is attached hereto as collective **Exhibit I**.

18

24.     Prior Noteholder sold, transferred, assigned, and conveyed all of its interest in the Loan Documents to Noteholder by executing certain agreements and instruments including without limitation:

a)  Allonge;

b)  Assignment of Deed of Trust and Security Agreement and Assignment of Assignment of Assignment of Leases and Rents recorded with the Register of Deeds for Knox County, Tennessee on April 27, 2010, as Instrument Number 201004270067352;

c)  Assignment of Deed of Trust and Security Agreement and Assignment of Leases and Rents recorded among the official records of Guilford County, North Carolina on March 22, 2010, as Instrument No. 2010013296 in Book R 7108, Page 2753;

d)  Assignment of Deed of Trust and Security Agreement and Assignment of Assignment of Leases and Rents recorded among the official records of Hertford County, North Carolina on April 26, 2010, in Book 722, Page 764; and

e)  Corrected Assignment of Amended and Restated Mortgage and Security Agreement with Notice of Future Advance and Assignment of Assignment and Leases and Rents recorded among the official records for Orange County, Florida on December 10, 2009 as Doc Number 20090718252 in Book 9974, Page 0075.

The foregoing are collectively the "Fifth Assignment".  A true and correct copy of the Fifth Assignment is attached hereto as collective **Exhibit J**.

25.     Noteholder is the owner and holder of the Loan Documents and is entitled to enforce all provisions thereof.  Pursuant to certain assignments, endorsements, and/or transfers of the Loan Documents, described above, Noteholder is (i) entitled to the right to receive payment

19

due under the Note; (ii) entitled to the right to receive the outstanding indebtedness evidenced by the Note; and (iii) the beneficiary and holder of the liens, security interests, and rights to enforce the terms and provisions contained within the Loan Documents.

**C.     Events of Default**

26.     Each of the Loan Documents is cross-defaulted and cross-collateralized with the others.  Section 10.18 of the Loan Agreement provides, in relevant part

> Borrower agrees that the [Security Instruments] are and will be cross-collateralized and cross-defaulted with each other so that (i) an Event of Default under any of the [Security Instruments] shall constitute an Event of Default under each of the other [Security Instruments] which secure the Note; (ii) an Event of Default under the Note or this Loan Agreement shall constitute an Event of Default under each [Security Instrument]; (iii) each [Security Instrument] shall constitute security for the Note as if a single blanket lien were placed on all of the Properties as security for the Note; and (iv) such cross-collateralization shall in no event be deemed to constitute a fraudulent conveyance.

27.     Pursuant to the terms of the Loan Documents, not later than January 1, 2017 (the "Maturity Date"), the entire outstanding principal balance of the Loan, together with all accrued and unpaid interest, property protection advances, late charges, expenses of Noteholder, including without limitation attorneys' fees, and all other amounts came due under the Loan Documents (collectively, the "Loan Obligations").  Borrowers failed to pay the Loan Obligations as of the Maturity Date, and by letter dated January 10, 2017, Noteholder demanded payment in full of the Loan Obligations.  A true and correct copy of Noteholder's correspondence dated January 10, 2017, is attached hereto as **Exhibit K**.

28.     As of the date hereof, Borrowers remain in default of the Loan Documents for failure to pay the Loan Obligations in full.

29.     Borrowers have continued to operate and manage the Properties; however, Borrowers have not been unable pay the amounts due under the Loan Documents.

20

**D.**     **Noteholder's Remedies Under the Loan Documents**

30.     Pursuant to the terms and provisions of the Loan Documents, including Section 3.1 of the Assignments of Rents and Section 7.1 of the Security Instruments, Noteholder is entitled to apply for and obtain the immediate appointment of a receiver of the Collateral, without regard to the adequacy of the value of the Properties, or to the solvency of Borrowers, all as more particularly set forth in the Loan Documents.

31.     Pursuant to the express terms of the Loan Documents, Borrowers agreed that, upon an Event of Default, Noteholder can "at its option . . . by a receiver appointed by a court, dispossess Borrower and its agents and servants from the Property . . . and take possession of the Property and all books, records and accounts relating thereto and have, hold, manage, lease and operate the Property on such terms and for such period of time as Lender may deem proper . . . ." Assignments of Rents, Exhibits D-1 through D-5, at Section 3.1.

32.     Borrowers also consented to Noteholder's right to seek appointment of a receiver following the Event of Default:

> 7.1 <u>Remedies</u>.  Upon the occurrence and during the continuance of any Event of Default, Borrower agrees that Lender may take such action, without notice or demand, as it deems advisable to protect and enforce its rights against Borrower and in and to the Property, including, but not limited to, the following actions, each of which may be pursued concurrently or otherwise, at such time and in such order as Lender may determine, in its sole discretion, without impairing or otherwise affecting the other rights and remedies of Lender:
>
> * * *
>
> (g) apply for the appointment of a receiver, trustee, liquidator or conservator of the Property, without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of the Borrower, any guarantor, indemnitor with respect to the Loan or of any Person liable for the payment of the Debt.

Security Instruments, Exhibits C-1 through C-5, at Section 7.1.

21

33.     Due to the limited recourse nature of the obligations under the Loan Documents and Borrowers' lack of assets other than the Collateral, Noteholder's source of repayment of the Loan will likely be limited to any recovery realized from liquidation of the Collateral.  Pursuant to the express terms of the Loan Agreement, Noteholder's remedies as to the Collateral include the right to seek the appointment of a receiver to protect its interest in the Collateral.

34.     On numerous occasions over a time period spanning several months prior to the Maturity Date, through their agents, Borrowers represented to Noteholder that they were unable to fund costs and expenses required to manage the Collateral, including amounts needed for repairs, maintenance, and taxes.  Borrowers' failure to maintain the Collateral has resulted in complaints from tenants, some of which are the major source of income for their respective Property, and caused some tenants to make repairs at their own expense then deduct such amounts from Rents otherwise due.  Additionally, Noteholder is aware of at least one major code violation at the Westgate Property that was issued by the Orange County Code Enforcement Division in September of 2016 due to Borrowers' failure to maintain the parking lot.

35.     While Noteholder has the right to foreclose the Collateral, extensive due diligence and analysis must be conducted prior to commencement of any such proceedings.  Once initiated, the foreclosure process is lengthy.  Until foreclosure or other disposition of the Collateral can be completed, it is necessary that a receiver be appointed so that the value of the Collateral can be maintained through proper management, delivery of tenant services, and assuring the safe operation of the Properties which are open to the public.

36.     Noteholder is contractually and equitably entitled to the appointment of a receiver to take possession of and hold, subject to the discretion of this Court, Collateral to maximize Noteholder's recovery of amounts due under the Loan Documents.

**E.   Federal Law Supporting The Appointment of Receiver**

37.     Pursuant to FED. R. CIV. P. 66, the Court may appoint a receiver upon application by a party in writing.

38.     A duly appointed receiver is an officer of the Court whose powers are set forth by 28 U.S.C. §§ 959(b) and 754 (in pertinent part), which provide,

> [A] trustee, receiver or manager appointed in any cause pending in any court of the United States, including a debtor in possession, shall manage and operate the property in his possession as such trustee, receiver or manager according to the requirements of the valid laws of the State in which the property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof.

28 U.S.C. § 959(b).

> A receiver appointed in any civil action or proceeding involving property, real, personal or mixed, situated in different districts shall, upon giving bond as required by the court, be vested with complete jurisdiction and control of all such property with the right to take possession thereof.

28 U.S.C. § 754.

39.     Upon the appointment of a receiver for property, real, personal or mixed, the territorial jurisdiction of the Court shall extend to any judicial district in which receivership property is found.  See 28 U.S.C. § 1692.

40.     In furtherance of its duties, a duly appointed receiver may administer property in its possession whether such property is located in the district where the receiver was appointed or another district including the right of a receiver to sell assets over which it is appointed.  See 28 U.S.C. §§ 2001 and 2004.

41.     Appointment of a receiver to manage and operate the Properties is just and necessary in this case based on Noteholder's contractual right to apply for and obtain the appointment of a receiver at law, as well as equitable considerations including Borrowers' failure

to meet their obligations under the Loan Documents and failure to maintain the Properties as needed to protect Noteholder's security for payment of the Loan.

42. All conditions precedent to the maintenance of this action have been performed.

43. In this action, Noteholder is seeking:

a) appointment of a receiver to oversee, administer, and manage the Properties pending the foreclosure, receiver sale pursuant to 28 U.S.C. §§ 2001 and 2004, or other disposition of the Properties and Collateral, or satisfaction of the Loan Obligations in full;

b) preliminary injunction, to take effect and remain in effect for the duration of this case, or until further order of this Court to facilitate the receivership estate; and

c) such other and further relief the Court may deem just and appropriate under the circumstances.

## Count I
## Breach of Contract

44. Noteholder incorporates by reference the allegations set forth above as if set forth fully herein.

45. Under the Loan Documents, one or more Events of Default have occurred and are continuing, including without limitation, Borrowers' failure to pay the Loan Obligations in full on or before the Maturity Date which failure constitutes a breach of the Loan Documents.

46. As the proximate result of Borrowers' breach of the Loan Documents, Noteholder is contractually entitled to exercise its remedies under the Loan Documents which includes applying for and obtaining the appointment of a receiver for the Collateral.

24

## Count II
## Appointment of a Receiver

47.     Noteholder incorporates by reference the allegations set forth above as if set forth fully herein.

48.     Based on the representations of Borrowers in the Loan Documents, the Properties are the sole assets of Borrowers.

49.     It is likely that Noteholder's source of repayment of the Loan will be limited to amounts recovered through liquidation of the Collateral.

50.     The Loan Documents expressly allow Noteholder to seek and obtain appointment of a receiver upon the occurrence of an Event of Default.

51.     Therefore, in accordance with Rule 66 of the Federal Rules of Civil Procedure, Noteholder, as a secured creditor, asks the Court to appoint a receiver to take immediate possession of, to hold, manage, and/or liquidate the Collateral.

52.     Noteholder requests that the Court appoint Trigild, Inc. ("Trigild") as the Receiver for the Properties with the primary persons responsible being William J. Hoffman, its president and CEO, and David Wallace, its General Counsel.  Trigild and its principals have nearly forty years of experience, national geographic coverage, and expertise necessary to act as Receiver in this case.

53.     Noteholder further requests that the Court grant the Receiver all the rights, powers, duties, authority, and protections ordinarily granted to a receiver and necessary to take possession of, maintain, and preserve the value of the Collateral, including, without limitation, (a) the right to sell the Real Properties and Collateral, or any part thereof, pursuant to 28 U.S.C. § 2001, *et seq.,* upon the request of Noteholder and in accordance with terms hereafter approved

25

by Noteholder and the Court; (b) the right to hire professionals, on terms approved by Noteholder, to help the Receiver manage, protect, preserve and liquidate the Properties; and (c) the right to enter the Properties and perform such investigations and assessments as may be necessary to evaluate the Collateral and to act in accordance with the terms of the proposed order which is attached hereto as **Exhibit L**.

54.     Noteholder further requests that the Receiver's compensation be paid monthly in arrears from the revenues generated from the Properties and Collateral as follows: (i) $2,500.00 per Property per month, with a windup fee of $2,000.00 per Property if the Receiver's appointment is less than six months, plus hourly fees for any required services outside the customary scope of receivership in the amount of $255.00 per hour for legal services, $195.00 per hour for management, accounting and operations support, and $75.00 per hour for clerical support, plus property accounting software costs of $150.00 per Property per month (the "Receiver Fee"); (ii) a monthly management fee equal to three percent of gross rental income for the Apopka Property and the Westgate Property, respectively, which fee shall be a minimum of $4,000.00 per Property per Month, and four percent of gross rental income for the Clinton Property, Westmarket Property, Little River Property, and Newmarket Property, respectively, which fee shall be a minimum of $2,000.00 per Property per Month (the "Management Fee"); (iii) if required, a leasing fee equal to three percent of gross base rental amount for any renewal leases, or at market rate if a new lease is obtained with a third party broker (the "Leasing Fee"); (iv) if required, a per project construction management fee of five percent of the first $250,000.00 billed, four percent of the second $250,000.00 billed, and three percent for amounts billed in excess of $500,000.00 (the "Construction Fee"); and (v) if required, ten percent of any savings obtained in a tax appeal, or hourly fees as set forth above (the "Tax Fee," and together

26

with the Receiver Fee, Management Fee, the Leasing Fee, the Construction Fee, collectively, the "Fee").

55.     Upon information and belief, the Fee can be derived and paid from the Collateral and sufficient collection of the Rents generated by the Properties.  Noteholder reserves the right to object to any fees or expenses Noteholder believes to be unreasonable.

56.     Finally, Noteholder requests that the Receiver be required to post a Receiver's Bond in an amount equal to twenty five thousand dollars ($25,000.00).

**Count III**
**Injunctive Relief**

57.     Noteholder incorporates by reference the allegations set forth above as if set forth fully herein.

58.     In order to fortify and enable the Receiver appointed by this Court, and to protect the interests of Noteholder, Noteholder requests that this Court enter a preliminary injunction, to take effect and remain in effect for the duration of this case, or until further order of this Court. Without an injunction to bolster the Receiver's powers, it is unlikely that the receivership will succeed.

59.     Under applicable law, Noteholder is entitled to preliminary injunctive relief if: (i) Noteholder is likely to prevail on the merits of its claims; (ii) Noteholder would suffer an irreparable injury if the court does not grant a preliminary injunction; (iii) a preliminary injunction would not cause substantial harm to others; and (iv) a preliminary injunction would be in the public interest. *G&V Lounge, Inc. v. Michigan Liquor Control Commission,* 23 F.3d 1071, 1076 (6th Cir. 1994); *International Longshoremen's Assoc. v. Norfolk S. Corp.,* 92 F.2d 900, 903 (6th Cir. 1991), *cert. denied,* 112 S. Ct. 63, 116 L.Ed.2d 38 (1991).

27

60.    Each of these elements is met in this case. The proof is uncontroverted that Borrowers have defaulted under the Loan Documents so there is a high likelihood that Noteholder will prevail on the merits of this case.

61.    In failing to manage and preserve the Collateral in the manner required to meet Borrowers' obligations under the Loan Documents, Borrowers are violating Noteholder's rights and impairing the Collateral.  Because of Borrowers' failure to provide the resources required to maintain the Properties and maximize the potential of the Properties, Noteholder will suffer imminent harm and irreparable injury and will be left without an adequate remedy at law unless it is granted immediate injunctive relief.

62.    Finally, an injunction is necessary to prevent interference by any of Borrowers or their agents and employees with the Receiver's operation of and control over the Properties and Collateral.

63.    Granting the relief requested will not harm Borrowers and will benefit the public interest by providing increased assurances to the tenants and their employees and invitees of proper, safe, and continuing operation of the Properties.  Without such relief, there is no other adequate remedy at law to protect the interest of Noteholder.

64.    Accordingly, for the reasons stated herein, Noteholder requests this Court: enter a preliminary injunction against Borrowers, and their successors, assigns, agents, employees, attorneys, or anyone acting for or in concert with them: (1) enjoining them from possessing and controlling the Collateral and from interfering in any way with the possession, control, or liquidation of the Collateral by the Receiver; (2) requiring them to turn over to the Receiver the possession, custody, and control over the Collateral, including, without limitation, Borrowers' records, books of account, ledgers and all business records thereof, wherever located and

28

however maintained (including, without limitation, information contained on computers and any and all software relating thereto, as well as all banking records, statements, and cancelled checks); (3) requiring them to turn over to the Receiver all documents which pertain to the Collateral, including, but not limited to, all insurance policies, whether currently in effect or lapsed, all contracts, leases and subleases, management agreements, franchise agreements, royalty agreements, employment agreements, licenses, permits or governmental approvals, assignments, or other agreements of any kind whatsoever relating to the Collateral; (4) enjoining Borrowers from removing any property from the business location and from removing, destroying, concealing, changing, or altering in any manner any of the books or records relating to the ownership, possession, or operation of the Properties and other Collateral; (5) requiring them to pay and turn over immediately to the Receiver all Rents and revenues from the Collateral, and to perform all acts necessary to transfer possession to the Receiver all the Properties and other Collateral related to the ownership, possession, or operation of the business and all accounts, accounts receivable, all keys, books, records, equipment, and all things in any manner related to the ownership, possession or operation of the Properties.  Noteholder also requests that this Court enter a preliminary injunction enjoining Borrowers or any party who is provided with notice of the Court's order, from prosecuting any claim against Borrowers or the Properties, other than in this action and only after proper motion is filed and an order is entered allowing such party to file such claim herein.  Noteholder also requests that upon final trial of this cause, that this Court enter a permanent injunction consistent with the above preliminary injunctions, except as modified to the extent necessary to protect Noteholder's interests in the Collateral.

29

65.     Noteholder shall provide prior notice to Borrowers of any hearing on its request for injunctive relief or provide proof of the consent of Borrower thereto.

## PRAYER FOR RELIEF

WHEREFORE, Noteholder prays for the following:

a.  That the Court grant Noteholder the relief it seeks on all counts;

b.  That the Court appoint Trigild as receiver to take possession and control of the Properties and other Collateral (including all personal property thereto, Rents, and revenues therefrom), to maintain, preserve, and/or liquidate the Collateral, including stabilizing the operation of the Properties;

c.  That the Receiver segregate, preserve, protect, collect and account for, and manage, operate, lease, maintain and preserve, the Properties, including the Rents;

d.  That the Court issue such orders as may be necessary under 28 U.S.C. §§ 754 and 1692 so as to permit the Receiver to effectuate the terms of his appointment in such other judicial districts in which the Collateral may be located;

e.  That Borrowers and their agents charged with operating and/or managing the Properties promptly render an accounting for all Rents and other income from the Properties and all other revenue from the Properties received by Borrowers as requested by the Receiver and provide all such information and reports concerning the ownership, use, operation, management, repair, maintenance and leasing of the Properties as may be required by this Court to provide the Receiver the information necessary to perform its obligations as receiver of the Collateral;

f.  That Borrowers promptly pay over to the Receiver and cause Borrowers' affiliates and the management companies currently managing the Properties promptly to pay over to the Receiver (1) all deposits of tenants of the Properties and all Rents, revenues and other income

30

from the Properties and all other funds which are a part of Collateral which are currently in their possession or control; and (2) all such deposits, Rents, revenue and other income from the Properties and other funds which are a part of Collateral which are received by any of them from and after the appointment of the Receiver;

g.   That the Receiver pay to Noteholder on a monthly basis any income and revenue from the Properties in excess of that amount reasonably required to manage, operate, lease, maintain and preserve the Properties and to pay any Fee;

h.   That Noteholder be permitted, at its sole election, and be authorized but not required to make such advances to the Receiver for the benefit and account of Borrowers under the Loan Documents as may be necessary from time to time, in the exercise of Noteholder's sole discretion, and as provided under the Loan Documents, to pay costs and expenses reasonably required to manage, operate, lease, maintain and preserve the Properties to the extent that Rents, income and other revenue from the Properties, are insufficient to pay such costs and expenses, all without Noteholder becoming a mortgagee in possession or incurring any other liability to Borrowers;

i.   That any such advances made by Noteholder pursuant to the foregoing paragraph (h) of this prayer be additional indebtedness which is owed to Noteholder under the Note and is secured by the Security Instruments and the other Loan Documents;

j.   That the Receiver be authorized, upon request by Noteholder, to list or otherwise advertise for sale and to solicit offers to purchase the Properties and to sell the Properties, on such terms as are acceptable and approved in writing prior to such sale by Noteholder, by way of public or private sale or other disposition in accordance with the applicable provisions of 28

31

U.S.C. §§ 2001 and 2004, free and clear of all security interests, liens, claims and other interests with all valid security interests and liens to attach to the proceeds of such sale(s);

k.   That nothing in the relief requested herein prohibit Noteholder from commencing and consummating judicial or non-judicial foreclosure proceedings against all or any part of the Properties under and pursuant to the provisions of the Security Instruments without further order of this Court;

l.   That all Noteholder's rights, remedies, and causes of action against Borrowers or the Collateral be preserved and reserved for future action or proceedings; and

m.   That this Court award such other and further relief as is just and proper.

Respectfully submitted this 24th day of January, 2017.

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.

s/ Nelwyn Inman
Nelwyn Inman (Tenn. Bar # 013624)
1900 Republic Centre
633 Chestnut Street
Chattanooga, Tennessee 37450
Telephone:  423.756.2010
Facsimile: 423.752.9587
ninman@bakerdonelson.com

**Attorneys for Plaintiff**

32

## VERIFICATION

I, Christopher Peters, Servicing Officer of C-III Asset Management LLC, acting solely in its capacity as Special Servicer for U.S. Bank National Association, as Trustee, successor to Wells Fargo Bank, N.A., as Trustee for the registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Trust 2007-LDP10 Commercial Mortgage Pass-Through Certificates, Series 2007-LDP10 ("Noteholder"), and a custodian of the business records of Noteholder, having first being duly sworn, and being authorized to make this statement, do make oath that I am an adult citizen competent to testify to the matters stated herein, that I have read the foregoing Verified Complaint and have examined the documents attached as Exhibits thereto, and that, based upon my personal knowledge of the facts stated therein and upon my review of the records of Noteholder that are kept on behalf of Noteholder by C-III Asset Management LLC as a regular practice of C-III Asset Management LLC in the course of C-III Asset Management LLC's regularly conducted business activity as servicer for Noteholder and that were made at or near the time of the occurrence of the matters set forth, but without independent audit or verification, the facts stated in the Verified Complaint are true, and the documents attached as Exhibits are accurate copies of the records of the regularly conducted activity of Noteholder.

U.S. Bank National Association, as Trustee, successor to Wells Fargo Bank, N.A., as Trustee for the registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Trust 2007-LDP10 Commercial Mortgage Pass-Through Certificates, Series 2007-LDP10

By:     C-III Asset Management LLC, acting solely in its capacity as Servicer for Noteholder

By:     _____

Christopher Peters

Its:     Servicing Officer

1

4839-8005-4080 v1
2016798-000264 01/12/2017

STATE OF TEXAS          )
                              ) SS:
COUNTY OF DALLAS     )

      Before me, a Notary Public in and for said County and State, personally appeared the above-named Christopher Peters, known to me to be the party described in the foregoing verified complaint, who executed the foregoing verification of the complaint on behalf of C-III Asset Management LLC, solely in its capacity as servicer for U.S. Bank National Association, as Trustee, successor to Wells Fargo Bank, N.A., as Trustee for the registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Trust 2007-LDP10 Commercial Mortgage Pass-Through Certificates, Series 2007-LDP10, and who acknowledged that he executed the same as his own free act and deed, for the uses and purposes therein mentioned.

      **IN WITNESS WHEREOF**, I have hereunto subscribed my name and affixed my hand and official seal, at Irving, Texas, this _23ʳᵈ_ day of January, 2017.

TROY W. CONCIENNE
Notary Public, State of Texas
My Commission Expires
June 28, 2017

_____
Notary Public

4839-8005-4080 v1
2016798-000264 01/12/2017

2